<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| VIMCO, INC., <br><br>                           Plaintiff, <br><br> v. <br><br> TERMINAL CONSTRUCTION CORP., ET AL. <br><br>                           Defendants. | Civ. No. 10-0692 (DRD) <br><br> **O P I N I O N** |

*Appearances by:*

FRENKEL, LAMBERT, WEISS, WEISMAN & GORDON, LLP
by: M. Diane Duszak, Esq. and Monroe Weiss, Esq.
80 Main Street, Suite 460
West Orange, NJ 07052

    *Attorneys for Plaintiffs*

PECKAR & ABRAMSON, P.C.
by: Patrick J. Greene, Jr., Esq.
70 Grand Avenue
River Edge, NJ 07661

    *Attorneys for Defendant*

**DEBEVOISE, Senior District Judge**

      This case involves a dispute over payments for work completed by Plaintiff Vimco, Inc. ("Vimco") in connection with the construction of a new building, commonly referred to as the "Campus Center," at The Richard Stockton College of New Jersey ("the College"). After finalizing its plans for the building, the College entered into an agreement with Defendant

Terminal Construction Corp. ("Terminal") to serve as the "general contractor" responsible for carrying out the project. Terminal hired another Defendant, U.S. Concrete, Inc. ("U.S. Concrete"), to provide building materials as a "subcontractor." U.S. Concrete, in turn, hired Plaintiff Vimco, Inc. ("Vimco") as a "sub-subcontractor." Pursuant to the agreement between U.S. Concrete and Vimco, the latter company provided various construction materials that were necessary for the former to perform on its contract with Terminal.

Vimco alleges that it performed on its agreement with U.S. Concrete. However, Terminal refused to pay U.S. Concrete pursuant to the contract between those parties. U.S. Concrete, in turn, failed to compensate Vimco. After its demands for payment were rebuffed, Vimco brought this suit, in which it asserts a breach of contract claim against U.S. Concrete, but also seeks to recover from Terminal and the College.[1]

Arguing that, under New Jersey law, a sub-subcontractor such as Vimco cannot recover from entities higher in the chain of contracts with whom it does not have privity, Terminal and the College (collectively, "moving Defendants") now move to dismiss the claims asserted against them pursuant to Federal Rule of Civil Procedure 12(b)(6). As additional grounds for that Motion, Terminal and the College contend that the claims against them are barred by various New Jersey statutes. Vimco disputes that claim, asserting that it still has time to comply with the deadlines contained in one of the statutes invoked by Terminal and the College, while the others are inapposite. With respect to the privity argument, Vimco concedes that a sub-subcontractor may not assert claims against a property owner or general contractor when those parties have

---

[1] Vimco is a Pennsylvania corporation with its primary place of business in that state. U.S. Concrete is a corporation formed under the laws of Texas, and has its headquarters in that state. Terminal is a New Jersey corporation whose primary office is located in that state. The College is a public corporation located in New Jersey and formed under that state's laws. Therefore, in light of the fact that the amount in controversy exceeds $75,000, this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

already paid the subcontractor with whom it is in privity. It argues, however, that a sub-subcontractor may recover directly from a property owner or general contractor when, as here, those parties did not fulfill their obligations to the subcontractor.

For the reasons set forth below, the pending Motion to Dismiss will be granted. The College enjoys sovereign immunity from quasi-contract claims such as the unjust enrichment cause of action asserted against it. Moreover, under New Jersey law, contractual privity is a prerequisite for claims of the type asserted against Terminal. Therefore, Vimco's claims against both Terminal and the College are barred as a matter of law, and will be dismissed with prejudice.

## I.  BACKGROUND

As discussed above, the facts of this case revolve around a series of construction contracts entered into by the parties while completing work on the new Campus Center at the College. In an agreement dated January 28, 2009, the College hired Terminal as the "general contractor" responsible for completing that project. Terminal contracted with U.S. Concrete to construct various parts of the building, and U.S. Concrete hired Vimco to aid in that task.

Under its contract with U.S. Concrete, Vimco agreed to provide concrete frames necessary to complete the project in exchange for a fee of $277,550.38. In its Complaint, Vimco alleges that it performed that task between August 3, 2009, the date on which it entered its contract with U.S. Concrete, and November 30th of that year. (Compl. ¶ 10.) On completion of the project, however, U.S. Concrete refused Vimco's demands for payment, (Compl. ¶ 15), presumably because Terminal refused to pay U.S. Concrete for its work under the contract between those parties. See (Compl. ¶ 19) (stating that Terminal "has wrongfully and improperly withheld some or all of the payments from [D]efendant U.S. Concrete.")

Based on those allegations, Vimco asserts four causes of action. The first is a simple breach of contract claim against U.S. Concrete. The second contends that both U.S. Concrete and Terminal violated the New Jersey Prompt Payment Act, N.J. Stat. Ann. § 2A:30A-2, by failing to compensate Vimco for the work it performed within 20 days after its completion. In its third claim, Vimco asserts a cause of action for unjust enrichment against all Defendants. Finally, Vimco argues that Terminal violated the New Jersey Trust Fund Act, N.J. Stat. Ann. § 2A:44-148, by using the money it received from the College for other purposes without first paying it and U.S. Concrete. In connection with each of its claims, Vimco seeks damages of $277,550.38 – the amount it was to have been paid under its contract with U.S. Concrete – plus prejudgment interest, litigation costs, and attorneys' fees.

## II.  DISCUSSION

Terminal and the College now move to dismiss the claims asserted against them pursuant to Federal Rule of Civil Procedure 12(b)(6). In doing so, they contend that those claims are barred as a matter of law.

With respect to the unjust enrichment claim contained in count three of the Complaint – the only claim asserted against both Terminal and the College – the moving Defendants contend that New Jersey law limits the remedies of a sub-subcontractor such as Vimco that does not have contractual privity with the general contractor or property owner to those provided by statute. Therefore, having failed to file a mechanic's lien under the New Jersey Construction Lien Law, N.J. Stat. Ann. §§ 2A:44A-1, et seq., Vimco is prohibited from seeking recovery through an equitable cause of action such as unjust enrichment. As an alternative grounds for dismissal, the College argues that Vimco's unjust enrichment claim against it is barred by the New Jersey

Contractual Liability Act ("NJCLA"), N.J. Stat. Ann. §§ 59:13-1, et seq., because Vimco did not contract directly with the College and did not file a Notice of Claim as required by that statute.

Additionally, the moving Defendants contend that Vimco's statutory causes of action – which are asserted only against Terminal – must also fail. In support of that assertion, they claim that Vimco lacks standing to assert the claims contained in count two of its Complaint against Terminal under the Prompt Payment Act. While that statute requires a contractor to pay its subcontractor within 10 days after the completion of work, N.J. Stat. Ann. § 2A:30A-2, Terminal argues that it does not impose a duty on the contractor to ensure that the subcontractor then compensates its sub-subcontractors.

Similarly, Terminal contends that Vimco may not assert claims under the Trust Fund Act because it failed to follow the notice procedures set forth in the New Jersey Public Works Bond Act ("NJPWBA"), N.J. Stat. Ann. §§ 2A:44-143, et seq. That statute is similar to the Construction Lien Law but applies specifically to building projects initiated by state agencies. It requires the general contractor on a project to set up a bond for the payment of all sub- and sub-subcontractors, N.J. Stat. Ann. § 2A:44-143, but states that any party not in contractual privity with the general contractor must file written notice of its potential claim prior to commencing work in order to recover. N.J. Stat. Ann. § 2A:44-145. In support of its assertion that Vimco's failure to comply with the NJPWBA bars its claims under the Trust Fund Act, Terminal cites case law to the effect that "as long as the general contractor pa[ys], in full, all the materialmen and subcontractors who [a]re in a direct contractual relationship with it … [it] fulfill[s] its obligations under the Trust Fund Act and ha[s] no legal duty to satisfy a claimant who furnished materials to its subcontractor." (Defs.' Br. Supp. Mot. Dismiss 9-10 (citing Universal Supply Co. v. Martell Constr. Co., Inc., 383 A.2d 1163, 1166 (N.J. Super. Ct. App. Div. 1978).)

5

For the sake of simplicity, the Court will analyze Vimco's claims against the College and Terminal separately. In doing so, it must apply the standard of review applicable to motions, such as this one, requesting dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

**A. Standard of Review**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to

dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

When a Complaint is dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, leave to amend and reassert the claims contained in that Complaint is ordinarily granted. In re Burlington Coat Factory Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). A claim may be dismissed with prejudice, however, if amending the Complaint would be futile. Id. "Futile," as used in this context, means that the Complaint could not be amended to state a legally-cognizable claim. Id. (citing Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996)).

**B. Vimco's Claims Against the College**

Under that standard, Vimco's unjust enrichment claim against the College must be dismissed. "The doctrine of unjust enrichment rests on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." Goldsmith v. Camden

7

County Surrogate's Office, 975 A.2d 459, 462 (N.J. Super. Ct. App. Div. 2009) (quotations omitted). "Unjust enrichment is not an independent theory of liability, but is the basis of a claim for quasi-contractual liability." Id. at 463 (quoting Nat'l Amusements, Inc. v. N.J. Tpk. Auth., 619 A.2d 262, 267 (N.J. Super. Ct. Law Div. 1992)).

Quasi-contractual claims are "synonymous with a contract implied in law, and contracts implied in law are specifically excluded from the scope of state liability under the Contractual Liability Act." Allen v. Fauver, 742 A.2d 594, 598 (N.J. Super. Ct. App. Div. 1999). Under that statute, the state waived "its sovereign immunity from liability arising out of an express contract or a contract implied in fact," but specifically retained immunity from "claims based upon implied warranties or contracts implied in law." N.J. Stat. Ann. § 59:13-3. Since Vimco's unjust enrichment claim against the College falls into the last category, it is barred, and must be dismissed with prejudice.

**C. Vimco's Claims Against Terminal**

Similarly, Vimco's claims against Terminal must be dismissed. The first of those claims is premised on the Prompt Payment Act. That statute states, in relevant part, that:

> If a subcontractor or subsubcontractor has performed on its contract with the prime contractor or subcontractor and the work has been accepted by the owner … the prime contractor shall pay to its subcontractor and the subcontractor shall pay to its subsubcontractor within 10 calendar days of the receipt of each periodic payment, final payment or receipt of retainage monies, the full amount received for the work of the subcontractor or subsubcontractor based on the work completed or the services rendered under the applicable contract.

N.J. Stat. Ann. § 2A:30A-2.

Thus, by its terms the Prompt Payment Act applies to two distinct situations: (1) a contract between the prime contractor and a subcontractor, and (2) one between a subcontractor and sub-subcontractor. In each, it simply imposes a deadline on the payments called for by the agreement between the parties. Id. It does not, as Vimco contends, create extra-contractual rights between

8

a sub-subcontractor and a general contractor that are not in privity.  Implying such rights in a case like this one would eviscerate two significant portions of the statute:  (1) the statement, contained in the first sentence of the excerpt above, that the Prompt Payment Act applies only when the party seeking compensation "has performed <u>on its contract</u>," and (2) the requirement that the payment sought must be "based on … <u>the applicable contract</u>."  N.J. Stat. Ann. § 2A:30A-2 (emphasis added).  Vimco concedes that it did not have a contract with Terminal.  <u>See, e.g.</u>, (Compl. ¶¶ 8, 9) (stating that the College contracted with Terminal and Vimco contracted only with U.S. Concrete); (Pl.'s Br. Opp'n Mot. Dismiss 1, 5) (noting repeatedly that Vimco and Terminal were not in contractual privity.)  Therefore, there is no set of facts under which Vimco could assert a meritorious claim against Terminal pursuant to the Prompt Payment Act, and its claims pursuant to that statute must be dismissed with prejudice.  <u>See</u> <u>Burlington Coat Factory</u>, 114 F.3d at 1434 (stating that a claim may be dismissed with prejudice if granting leave to amend would be futile).

  Vimco's unjust enrichment claim against Terminal is similarly unavailing.  Under New Jersey law, a sub-subcontractor may not recover based on quasi-contract theories such as unjust enrichment against a general contractor when there was no objective expectation that the general contractor would be liable for the work performed by the sub-subcontractor.  <u>Insulating Contracting & Supply v. Kravco, Inc.</u>, 507 A.2d 754, 759-60 (N.J. Super. Ct. App. Div. 1986) (In a situation where the plaintiff sub-subcontractor "had no dealings with the defendant developer [and] did not expect remuneration from it" when the work was completed, "a plaintiff is not entitled to use quasi-contract to substitute one debtor or promisor for another."); <u>F. Bender, Inc. v. Jos. L. Muscarelle, Inc.</u>, 700 A.2d 374, 376 (N.J. Super. Ct. App. Div. 1997) (rejecting equitable claims by a sub-subcontractor against a general contractor with which it was not in

contractual privity because "the prime contractor's obligations ran solely to the subcontractor."). "If the party conferring a benefit does so pursuant to a contract with a third party, then non-performance by the other party to the contract does not entitle the party conferring the benefit to repayment from the recipient on a theory of restitution or unjust enrichment." Kravco, 507 A.2d at 760.

Vimco alleges just such a situation in this case. It claims that it conferred a benefit on Terminal by providing materials to U.S. Concrete. (Compl. ¶ 22.) Those materials were provided, however, pursuant to a contract between U.S. Concrete and Vimco. (Compl. ¶ 9.) Accordingly, U.S. Concrete's failure to perform on the contract by compensating Vimco cannot form the basis for an unjust enrichment claim against a third party such as Terminal, regardless of whether that third party received a benefit as the result of Vimco's work. Kravco, 507 A.2d at 760; see also Fidelity & Deposit Co. of Md. v. McClintic-Marshall Corp., 171 A. 382, 385 (N.J. Ch. 1934) ("[t]o parties who furnish labor or materials to subcontractors but fail to proceed under the [NJPWBA], no equitable lien is given," as doing so "would make the contractor's property liable for the debt of another."). Therefore, Vimco's unjust enrichment claim is without merit.[2] Moreover, in light of the undisputed fact that it performed its work pursuant to a contract with U.S. Concrete and was not in contractual privity with Terminal, Vimco would be unable, even if granted leave to amend its Complaint, to allege any set of facts under which it would have a meritorious unjust enrichment claim against Terminal. Therefore, its unjust enrichment claim will be dismissed with prejudice. See Burlington Coat Factory, 114 F.3d at 1434 (stating that a claim may be dismissed with prejudice if granting leave to amend would be futile).

---

[2] In light of the fact that Vimco's unjust enrichment claim is precluded by binding New Jersey case law, the Court need not decide whether, as asserted by the moving Defendants, that state's law limits the remedies of a sub-subcontractor that does not have contractual privity with the general contractor or property owner to those provided by statute.

Finally, Vimco's claim against Terminal under the Trust Fund Act must be dismissed. As a preliminary matter, though, the Court rejects Terminal's contention that Vimco's claim under the Trust Fund Act is barred for failure to comply with the procedures set forth in the NJPWBA. In <u>Universal Supply</u> – the principal case on which Terminal relies – the Appellate Division of the Superior Court of New Jersey unequivocally held that "[t]here is no rational basis for superimposing the procedural underpinnings for recovery on a [NJPWBA claim] to the [Trust Fund Act], which simply provides that the moneys paid by the State to its prime contractor shall constitute a trust fund in the hands of such contractor." 383 A.2d at 1165.

In the same case, the Court held that the Trust Fund Act's "ambit of protection … is limited to those who have furnished labor or material to the project through direct contact with the prime contractor." <u>Id.</u> at 1166. Elsewhere in its decision, the Court reiterated that "[t]he Trust Fund Act … protects only those who have a direct contractual relationship with the prime or general contractor." <u>Id.</u> at 1167. Those holdings followed longstanding precedent holding that the Trust Fund Act does not apply to sub-subcontractors who are not in contractual privity with the general contractor. In the first case interpreting that statute, the New Jersey Court of Chancery held that:

> The purpose of the legislature in [enacting the Trust Fund Act] was … to re-enforce the bond required by the [NJPWBA] and also to give security to those <u>who dealt directly with the contractor</u> and who failed to proceed under the [NJPWBA]. The claims to security which the trust is created should be construed to mean claims on which the contractor is liable by reason either of his promise to pay or else of action taken under the [NJPWBA].

<u>Fidelity</u>, 171 A. at 385 (emphasis added).

Thus, a sub-subcontractor who wishes to obtain compensation from the general contractor "must seek relief through a suit on the payment bond" under the NJPWBA. <u>Id.</u> In the absence of a direct contractual relationship with the general contractor, such a sub-subcontractor may not

11

escape the notice requirements of the NJPWBA by asserting claims under the Trust Fund Act. Universal Supply, 383 A.2d at 1166 ("[U]nlike the Bond Act, [the Trust Fund Act] does not make the prime contractor a guarantor of payments for labor or materials furnished to its subcontractor.").

In attempting to circumvent that principle, Vimco makes much of the Court's statement, elsewhere in Universal Supply, that "[a]s long as the prime contractor … paid in full all the materialmen and subcontractors who were in a direct contractual relationship with it, [it] fulfilled its trust obligations under the Trust Fund Act." Id. On the basis of that statement and its allegation that Terminal did not fulfill its obligation to pay U.S. Concrete, (Compl. ¶ 19), Vimco argues that this case falls under an exception to the general principle that a sub-subcontractor may not assert claims under the Trust Fund Act against a general contractor with which it was not in contractual privity. That contention is unavailing. As discussed above, it is well-established that the Trust Fund Act applies only to those parties with whom the general contractor was in privity. Universal Supply, 383 A.2d at 1167 ("The Trust Fund Act … protects only those who have a direct contractual relationship with the prime or general contractor."); Fidelity, 171 A. at 385 (The Trust Fund Act applies only "to those who dealt directly with the contractor."). While Terminal's alleged failure to pay U.S. Concrete before diverting trust funds may mean that it did not fulfill its obligations under that statute, it does not mean that Vimco may sue to enforce those obligations. U.S. Concrete may have a claim against Terminal under the Trust Fund Act; Vimco does not. Nor can Vimco allege, in light of the fact that it has conceded that it did not contract directly with Terminal, any set of factual circumstances under which it would have such a claim. Therefore, Vimco's claims against Terminal pursuant to the

Trust Fund Act must be dismissed with prejudice.  See Burlington Coat Factory, 114 F.3d at 1434.

### III.  CONCLUSION

For the reasons set forth above, the Motion to Dismiss is granted and Vimco's claims against Terminal and the College are dismissed with prejudice.

The Court will enter an Order implementing this Opinion.


 s/ Dickinson R. Debevoise_____
 DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:  July 14, 2010